FILED
MAY 15 2009
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
    DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| ANDRES R. MERAZ,<br>    Plaintiff,<br><br>v.<br><br>M. SUSAN RICE, P.C., and MARGARET<br>SUSAN RICE a/k/a Margaret Susan Engle,<br>    Defendants. | §<br>§<br>§<br>§ CAUSE NO. SA-09-CA-138-OG<br>§<br>§<br>§<br>§ |

# ORDER

Before the Court are defendants' motion to dismiss (docket no. 3) and motion to dismiss for lack of jurisdiction (docket no. 12), and plaintiff's motion for default judgment (docket no. 6).

Plaintiff Andres R. Meraz sued defendants M. Susan Rice, P.C., and Margaret Susan Rice a/k/a Margaret Susan Engle (hereinafter "Rice") in connection with a state court suit filed against him in Bexar County District Court by the Bridlewood Park Homeowners Association, Inc. ("the HOA") seeking collection of maintenance assessments on his property in addition to collection costs, reasonable attorney's fees, and costs of court.[1] Complaint, ex. HH ("the collection suit"). Rice filed the collection suit as the attorney for the HOA. It is not disputed that Meraz paid the maintenance assessments on March 14, 2008 prior to filing his answer in the collection suit, and that Rice seeks in the collection suit to recover only her attorney's fees accrued in collecting the debt.

Meraz alleges a cause of action under the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.* ("FDCPA"), allegations of misrepresentation and fraud in connection with the

---

[1] The suit is styled <u>Bridlewood Park Homeowners Association, Inc. v. Andres R. Meraz</u>, 2007-CI-16124, and is currently pending in the 288th Judicial District Court of Bexar County Texas.

FDCPA violations, and causes of action for "infliction of emotional distress" and abuse of legal process based on the wrongful filing of a *lis pendens* notice.

Under the FDCPA, Meraz raises claims under §§ 1692e(2), (11), and (14), which proscribe debt collectors from the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt", §§ 1692f(1) and (5), which prohibit the use of "unfair or unconscionable means to collect or attempt to collect any debt", and § 1692g(a), which outlines the required contents of a validation notice.

As damages, Meraz seeks recovery of any attorney's fees awarded to Rice in the collection suit, recovery of the moneys collected from him by Rice, damages for emotional distress, exemplary damages, and attorney's fees, costs, and interest in the present suit.

### I. Meraz's motion for default judgment

Meraz argues that since Rice's motion to dismiss did not reference his causes of action for misrepresentation and fraud, and since she did not otherwise file a timely answer, she has defaulted on those causes of action. Although Meraz has not moved for entry of default, he now seeks a default judgment on those claims.

Fed. R. Civ. P. 12(a)(4) provides that the filing of a motion permitted under Rule 12(b) extends the time period for filing an answer until ten days after notice of the court's action on the motion to dismiss. Id. The rule does not specifically address the effect of a partial motion to dismiss. Although the case law on this point is not extensive, the majority of the courts to consider the issue hold that the filing of a motion addressing only part of a complaint suspends the time to respond to the entire complaint, not just to the claims that are the subject of the motion. See, e.g. Ideal Instruments, Inc. v. Rivard Instruments, Inc., 434 F.Supp.2d 598, 639

(N.D. Iowa 2006); Godlewski v. Affiliated Computer Servs., Inc., 210 F.R.D. 571, 572 (E.D. Va. 2002); Finnegan v. University of Rochester Med. Ctr., 180 F.R.D. 247, 249 (W.D. N.Y. 1998); Brocksopp Eng'g, Inc. v. Bach-Simpson Ltd., 136 F.R.D. 485, 486 (E.D. Wis.1991); Baker v. Universal Die Casting, Inc., 725 F.Supp. 416, 420 (W.D. Ark. 1989); 5B C. WRIGHT AND A. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D, § 1346, 146 (2d ed. Supp.2002); *but see* Gerlach v. Michigan Bell Tel. Co., 448 F.Supp. 1168 (E.D. Mich. 1978).  The courts taking the majority position reason that to hold otherwise would require duplicative sets of pleadings in the event that the Rule 12(b) motion is denied and cause confusion over the proper scope of discovery during the motion's pendency.  In addition, Rule 12(a)(4) provides that "serving a motion under this rule alters these periods [to file a response] . . .."  Thus, *any* motion contemplated by the rule will suspend the time to answer all claims.  See Ideal Instruments, Inc., 434 F.Supp.2d at 639; Ricciuti v. New York City Transit Auth., No. 90 Civ. 2823(CSH), 1991 WL 221110, *2 (S.D. N.Y. Oct. 3, 1991) (unpublished op.).

This Court will follow the majority approach.  To hold otherwise would unnecessarily confuse and complicate the case.  The present case offers an example.  Had Rice been required to answer on March 12 the claims not addressed in her motion to dismiss, the parties would have been forced into a "dual-track" litigation involving a bifurcated discovery schedule and multiple and duplicative sets of pleadings and scheduling orders.  Such an approach is costly and inefficient, an affront to judicial economy, and not compelled by either the plain language of Rule 12(a)(4) or common sense.

The Court holds that Rice's motion to dismiss suspended the time for her answer pursuant to Rule 12(a)(4).  The motion for default judgment will be denied.

Meraz also argues that Rice filed her response late. Meraz filed his motion electronically on March 18, 2009, and service was made electronically. Rice's response was due 11 days after service. Local Rule CV-7(d). Since the eleventh day was a Sunday, the response was due on Monday, March 30, 2009. FED. R. CIV. P. 6(a)(3). When service is made electronically, three days are added after the period would otherwise expire. FED. R. CIV. P. 6(d) (referencing FED. R. CIV. P. 5(b)(2)(E)). Since the period would otherwise expire on March 30, three days are added, and the due date of the response became April 2. See FED. R. CIV. P. 6, Advisory Committee Note, 2005 Amendments. The response, filed April 1, was timely.

## II. Rice's motion to dismiss

### A. FDCPA.

The FDCPA is the primary federal legislation dealing with unfair and deceptive consumer debt collection practices. The FDCPA prohibits debt collectors from making false or misleading representations and from engaging in various abusive and unfair practices. See 15 U.S.C. §§ 1692 *et. seq*.

Meraz's FDCPA allegations are premised on letters sent by Rice to his attorney, and documents filed by Rice in the collection suit. The only letter by Rice addressed directly to Meraz is an August 15, 2007 letter seeking collection of past due assessments, costs, interest, and attorney's fees. Complaint ¶ 54. This letter was dated prior to Meraz obtaining legal representation. Complaint ¶¶ 61-62 & ex. JJ. According to the allegations in his complaint, Meraz never received this letter. Complaint ¶¶ 57, 92k. Rather, it was attached as an exhibit to a motion for partial summary judgment in the collection suit. Complaint, ex. GGG. All the other documents complained of were either communications from Rice to Meraz's attorney or filings in

4

the collection suit.

The FDCPA applies to attorneys who regularly engage in consumer debt collection activity, including litigation, on behalf of a creditor client. Heintz v. Jenkins, 514 U.S. 291, 299 (1995); Garrett v. Derbes, 110 F.3d 317, 318 (5th Cir. 1997). It is also the majority view that the communications made by the collecting lawyer to a debtor's attorney are not actionable under the Act. See, e.g., Guerrero v. RJM Acquisitions LLC, 499 F.3d 926, 936 (9th Cir. 2007); Kropelnicki v. Siegel, 290 F.3d 118, 127-28 (2d Cir. 2002); Hill v. Mut. Hosp. Serv., Inc., 454 F.Supp.2d 779, 782 (S.D. Ind. 2005); Diesi v. Shapiro, 330 F.Supp.2d 1002, 1004 (C.D. Ill. 2004); Zaborac v. Phillips and Cohen Assocs., Ltd., 330 F.Supp.2d 962, 966-67 (N.D. Ill. 2004); Tromba v. M.R.S. Assocs., Inc., 323 F.Supp.2d 424, 428 (E.D. N.Y. 2004); *but see* Sayyed v. Wolpoff & Abramson, 485 F.3d 226, 232-33 (4th Cir. 2007). Guerrero also cites several unpublished district court opinions that have reached the same conclusion. 499 F.3d at 936 n.5.

The holdings in these cases turn on two basic principles. First, the purpose of the Act is to protect vulnerable and unsophisticated consumers from abusive, deceptive and unfair debt collection practices at the hands of debt collectors. Guerrero, 499 F.3d at 938. The consumer's attorney functions as an intermediary between the debt collector and the consumer whose duty it is to protect the consumer from a debt collector's fraudulent or harassing behavior. Id. at 938-39; Kropelnicki, 290 F.3d at 127-28.[2] Therefore, the Act's purposes are not served by applying its strictures to attorney-to-attorney communications. Second, a consumer and his attorney are not one and the same for the purposes of the Act, which contains distinctions between these two

---

[2] Indeed, if the debt collector knows the consumer is represented by counsel, he may not communicate with the consumer directly but must communicate only with counsel. 15 U.S.C. § 1692c(a)(2).

5

entities. Guerrero, 499 F.3d at 935-36. The Act evinces a congressional understanding that "when it comes to debt collection matters, lawyers and their debtor clients will be treated differently." Id. at 935.

The Fourth Circuit has reached a different conclusion and held that communications with a consumer's attorney fit within the statutory definition of "communication" as "the conveying of information regarding a debt directly or indirectly to any person through any medium.' " Sayyed, 485 F.3d at 232-33 (quoting § 1692a(2)). The Seventh Circuit has also concluded that the Act applies to communications between lawyers, but held that such communications should be evaluated under a different standard than the "least sophisticated debtor" standard employed when the communication is directed at the consumer. Evory v. RJM Acquisitions Funding L.L.C., 505 F.3d 769, 775 (7th Cir. 2007). With respect to communications with a consumer's attorney, the court concluded "that a representation by a debt collector that would be unlikely to deceive a competent lawyer, even if he is not a specialist in consumer debt law, should not be actionable." Id.

The Court finds the analysis of Guerrero and Kropelnicki more persuasive. As the Guerrero court observed, the Sayyed court did not acknowledge the great weight of authority holding to the contrary, and found support in § 1692c(a)(2), which actually cuts in the opposite direction by demonstrating that the Act contemplates different roles for and different treatment of attorneys and their clients. 499 F.3d at 938. In addition, Sayyed relied upon the implicit assumption that the Supreme Court resolved this issue in Heintz because the communication in that case happened to be sent to the consumer's attorney. Id. That fact, however, was not crucial to the holding in Heintz, and the Supreme Court was addressing an entirely different issue, that

6

is, whether attorneys who regularly collect consumer debts through litigation are "debt collectors" under the Act. Heintz, 514 U.S. at 292.

Finally, even if the Court were to apply the Seventh Circuit's approach in Evory, Meraz has not alleged that his lawyer was likely to be deceived by the communications he received from Rice.

The Court holds that Meraz has no cause of action under the FDCPA against Rice for communications directed by Rice to Meraz's attorney.

Communications between lawyers, however, are to be distinguished from pleadings filed during litigation. The latter are covered by the Act. The Court reaches this conclusion for several reasons. First and foremost, the Supreme Court in Heintz held that the FDCPA applies to attorneys who regularly engage in debt-collection activity "even when that activity consists of litigation." 514 U.S. at 299. While the issue addressed in Heintz was whether the FDCPA applied to attorneys, the Court in Heintz discussed the application of the FDCPA to ordinary, court-related documents and declined to draw a line between "legal" activities and "debt collection" activities because "litigating, at first blush, seems simply one way of collecting a debt." Heintz, 514 U.S. 296-97.

Second, while the Fifth Circuit has not spoken to this issue, numerous out-of-circuit courts have interpreted Heintz to support the proposition that litigation activities of attorneys, including the filing of a complaint and other court documents, are subject to the FDCPA. See, e.g., Sayyed, 485 F.3d at 229-32 (FDCPA applies to litigation activities of attorneys because of the Supreme Court's holding in Heintz, a post-Heintz statutory amendment, and similar holdings by other circuits); Goldman v. Cohen, 445 F.3d 152, 155 (2nd Cir. 2006) (legal pleadings are

7

subject to the FDCPA unless the precise statutory section at issue expressly excludes legal pleadings); Gearing v. Check Brokerage Corp., 233 F.3d 469, 472-73 (7th Cir. 2000) (an allegation in a state court complaint was a false representation and a violation of FDCPA).

Finally, a court in this district has recently reached the same conclusion— that an FDCPA action may be premised on litigation filings. See Eads v. Wolpoff & Abramson, LLP, 538 F. Supp. 2d 981, 987-88 (W.D. Tex. 2008) (citing Heintz, Sayyed, and Goldman).

The Court acknowledges that the allegations set forth in pleadings and other litigation filings do not present the same risk of false, misleading, and unfair practices as other debt collection efforts, such as telephone calls or correspondence sent directly to a consumer. This is because court filings are supervised by a judge and regulated by the myriad rules of procedure, evidence, and ethics. Nevertheless, given the broad language in Heintz, the weight of authority applying the Act to the contents of litigation filings, and the lack of controlling authority or statutory language to the contrary, the Court must therefore conclude that the FDCPA applies to state court pleadings and other litigation filings.

With these principles in mind, the Court turns to Meraz's specific complaints. In all of his complaints concerning Rice's filings in the collection case, Meraz asserts that the filings do not disclose that they are from a debt collector. The plain language of § 1692e(11), however, exempts pleadings filed in legal actions from the requirement to notify the consumer that the communication is from a debt collector. See Sayyed, 485 F.3d at 231 ("This provision [§ 1692e(11)] expressly exempts formal pleadings from a sole, particularized requirement of the FDCPA: the requirement that all communications state that they come from a debt collector.").

Regarding Rice's April 21, 2008 disclosure request and January 8, 2009 disclosure

8

response, Meraz argues that they contain false representations in that the documents that establish the amount of the debt were not attached. Complaint ¶¶ 72, 75. These paragraphs fail to state a claim for relief. A debt collector does not violate the FDCPA by filing a complaint for monies owed without having an immediate means to prove the debt. Harvey v. Great Seneca Fin. Corp., 453 F.3d 324, 331-33 (6th Cir. 2006). Rather, a debt collector will only be liable where it files a false document or false affidavit with the complaint, makes false claims regarding the debt, or fails to make a reasonable investigation into whether or not the debt existed. Id.

Meraz argues that Rice's April 21, 2008 production response violated § 1692g(a)(3) in that it allowed the debtor 31 days after the date of the notice to dispute the validity debt instead of 30 days after receipt of the notice as the statute provides. Clearly, however, § 1692g(a) has no application to civil pleadings. See § 1692g(d) ("A communication in the form of a formal pleading in a civil action shall not be treated as an initial communication for purposes of subsection (a) of this section."); see also Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC, 480 F.3d 470, 473 (7th Cir. 2007) ("[L]egal pleadings no longer need be preceded or accompanied by verification notices.") (citing Pub.L. 109-351, 120 Stat. 2006 (Oct. 13, 2006)) (adding 15 U.S.C. § 1692g(d) to the FDCPA). Therefore, these complaints fail as a matter of law.

Meraz's only complaints that may allege a violation of the FDCPA relate to Rice's April 21, 2008 response to Meraz's production request (Complaint exs. TT & QQQ) and Rice's motion for partial summary judgment filed on August 28, 2008 (Complaint ex. GGG). Meraz alleges that these documents contain false representations in that Rice's computation of her attorney's fees is not accurate. Complaint ¶¶ 79, 92. These paragraphs both state:

The document contains false representations, to wit: the amount of the debt owed.

9

> Rice's tabulation of attorney fees is not accurate, contains charges for items for which there should be no charge, contains charges that are not in accord with the fee schedule set forth in her fee agreement, contains charges for lawyer work that was not performed by attorneys, contains backdated charges created months after the supposed efforts, and contains altered records.

Id. In addition to this allegation, Meraz raises numerous other complaints concerning the motion for partial summary judgment. Complaint ¶¶ 92 a-k. Meraz argues that the motion for partial summary judgment alleges that Meraz has not paid his maintenance fees when he paid them on March 14, 2008 (¶ 92a). He also raises numerous arguments relating to Rice's alleged false or inaccurate computation of her attorney's fees (¶¶ 92 e-j). The Court must assume for the purposes of this motion to dismiss that these allegations are true, construe them in the light most favorable to the plaintiff, and draw all inferences in his favor. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Truman v. United States, 26 F.3d 592, 594 (5th Cir. 1994). The Court concludes that Meraz has stated a cause of action in these paragraphs under FDCPA § 1692e(2), which prohibits the false representation of the character, amount or legal status of any debt, or of any services rendered or compensation that may be lawfully received by the debt collector for collecting the debt, and under § 1692f, which states that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."

Meraz also raises complaints about Rice's August 15, 2007 letter, which he admittedly never received (¶ 92k) until it was included as an exhibit to the motion for partial summary judgment. The letter contains false statements, Meraz argues, because it provides for recovery of "all attorney fees" as opposed to "reasonable and necessary" attorney's fees. Further, Meraz argues, the letter represents that he has 31 days after the date of notice to respond rather than 30 days from the date of receipt.

10

Even the least sophisticated consumer would conclude that a letter attached as an exhibit to a pleading in a civil collection suit that he had never before seen is not an initial communication or a validation notice. In any event as indicated above, § 1692g(a), which states that response time is 30 days from receipt of notice, does not apply to state court pleadings.

What the August 15, 2007 letter actually states regarding attorney's fees is: "If I do not hear from you, I will recommend that my client begin legal proceedings and seek the recovery of their [sic] costs and attorney's fees." Meraz has cited the Court to no authority, and the Court has found none, that states that it is false or misleading to notify the debtor that the debt collector will seek attorney's fees as opposed to *reasonable* attorney's fees. In fact, there is nothing false or misleading in the statement. Even the least sophisticated consumer must presume that if a collection suit is filed and attorney's fees are awarded, those fees will be awarded by the court in accordance with the law.

In paragraph 92d of the Complaint, Meraz argues that the motion for partial summary judgment contains a false statement in that it states that Meraz was given notice "around June 1, 2007" by the HOA of amounts owed, but the referenced exhibit contains an attachment showing entries on his HOA "Member Balance Activity" through July 10, 2007. Meraz does not explain how this discrepancy in dates is a false or misleading representation under the FDCPA provisions he relies upon. § 1692e(2), (11), (14).

Meraz also raises numerous complaints regarding the signature stamp that is used by Rice's law office employees to affix her signature to documents. Complaint ¶¶ 91, 102-108. Meraz does not explain how this practice violates any of the FDCPA provisions he cites in his complaint.

11

In summary, the only allegations in Meraz's complaint that raise potential FDCPA claims are those complaining that Rice inaccurately calculated the attorney's fees she claimed she was owed as a result of collecting the debt. The motion to dismiss is DENIED as it pertains to those claims and GRANTED as it pertains to Meraz's other FDCPA claims.

Rice argues, however, that the FDCPA does not apply at all to attempts to collect attorney's fees. Rice relies on Fields v. Wilber Law Firm, P.C., 383 F.3d 562 (7th Cir. 2004) and various district court opinions for the proposition that the FDCPA does not apply to attempts to obtain attorney's fees in conjunction with efforts to collect a debt. Fields involved a misleading collection letter that failed to explain to the consumer that the total amount due included attorney's fees. Id. at 565-66. The court held that the letter could have conceivably misled an unsophisticated consumer because it more than doubled the consumer's original debt of $122.06 without explaining that the collector was seeking attorney fees of $250. Id. at 566. In Fields, the court explained that the amount of attorney's fees sought may not be precise, since the amount may be challenged as to reasonableness or negotiated. The court continued:

> But when a debtor has contractually agreed to pay attorneys' fees and collection costs, a debt collector may, without a court's permission, state those fees and costs and include that amount in the dunning letter. Doing so does not violate the FDCPA. Indeed, refusing to quantify an amount that the debt collector is trying to collect could be construed as *falsely stating the amount of debt*.

Id. at 565 (emphasis added). The court held, "[e]ven if attorneys' fees are authorized by contract, as in this case, and even if the fees are reasonable, debt collectors must still clearly and fairly communicate information about the amount of the debt to debtors." Id. The court concluded that the Meraz's allegations were sufficient to state a claim under § 1692e and § 1692f. Id. at 565-66.

Thus Fields does not stand for the proposition that efforts to collect attorney's fees are not

12

subject to the FDCPA. On the contrary, as this Court has already concluded, an allegation that the amount of those fees was misstated can state a cause of action under both §§ 1692e and 1692f.

**B. Abuse of process.**

Meraz alleges that Rice filed an improper *lis pendens* notice while acting as a debt collector and pursuing a consumer debt collection lawsuit against him. Complaint ¶ 139. He alleges that Rice's client's requirements for serving a *lis pendens* notice were not satisfied before Rice filed the notice. Id. Meraz also relies on his allegations of misrepresentation and fraud committed by Rice in the collection suit and alleges that Rice improperly calculated the attorney's fees due her and sought to avoid disclosing the proper amounts due. Id. at ¶¶ 138, 140.

> The elements of an abuse of process claim include (1) an illegal, improper, or perverted use of the process, neither warranted nor authorized by the process, (2) an ulterior motive or purpose in exercising such use, and (3) damages as a result of the illegal act. To constitute an abuse of process, the process must have been used to accomplish an end which is beyond the purview of the process and which compels a party to do a collateral thing which he could not be compelled to do. The critical aspect of this tort is the improper use of the process after it has been issued. Stated another way, the original issuance of process is justified, but the process itself is later used for a purpose for which it was not intended. When the process is used for the purpose for which it was intended, even though accomplished [sic] by an ulterior motive, no abuse of process has occurred.

Preston Gate, LP v. Bukaty, 248 S.W.3d 892, 897 (Tex.App.--Dallas 2008, no pet.) (citations omitted).

Meraz has not alleged an abuse of process cause of action and cannot support such a claim on the facts alleged. There is no allegation that Rice made improper use of the lawsuit and the *lis pendens* after they were filed or sought to use them for any purpose other than for their intended purposes in collecting a debt. See Detenbeck v. Koester, 886 S.W.2d 477, 481 (Tex.

13

App.--Houston [1st Dist.] 1994, no pet.) ("mere procurement or issuance of process with a malicious intent, or without probable cause, is not actionable; there must be an improper use of the process after its issuance"). The abuse of process claim is DISMISSED.

**C. Infliction of emotional distress.**

Meraz seeks damages for infliction of emotional distress based on Rice's alleged abuse of process. Complaint ¶¶ 146, 148. Because this cause of action cannot stand, it will not support mental anguish damages.

Meraz states that he does not seek damages for intentional infliction of emotional distress. If he had, that claim could not stand as a matter of law. The elements of the tort of intentional infliction of emotional distress are: (1) the defendant acted intentionally or recklessly; (2) the conduct was extreme and outrageous; (3) the actions of the defendant caused the plaintiff emotional distress; and (4) the emotional distress suffered by the plaintiff was severe. Twyman v. Twyman, 855 S.W.2d 619, 621 (Tex. 1993). To be liable for intentional infliction of emotional distress, a defendant's conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Id. "It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery." Danawala v. Houston Lighting & Power Co., 14 F.3d 251, 256 (5th Cir. 1993) (quoting Wornick Co. v. Casas, 856 S.W.2d 732, 734 (Tex. 1993)). The allegations in Meraz's complaint do not meet the standard of extreme and outrageous behavior that could support a claim for intentional infliction of emotional distress. In addition, with limited exceptions, claims of negligent infliction of emotional distress are not recognized under Texas law. Boyles v. Kerr,

14

855 S.W.2d 593, 594 (Tex. 1993) (op. on mot. for reh'g) ("[T]here is no general duty in Texas not to negligently inflict emotional distress. A claimant may recover mental anguish damages only in connection with defendant's breach of some other legal duty.").

While Meraz does not specifically seek mental anguish damages arising out of Rice's alleged FDCPA violations, he does seek "all damages authorized pursuant to FDCPA, § 1692k, Civil liability." Complaint ¶ 144. He also seeks mental anguish damages based on Rice's "wrongful and unethical conduct committed in association with the underlying state, debt-collection litigation . . .." Complaint ¶ 148.

Section 1692k of the FDCPA permits recovery of actual damages for emotional distress. Davis v. Creditors Interchange Receivable Management, LLC, 585 F.Supp.2d 968, 971 (N.D. Ohio 2008). There is a split of authority whether a plaintiff must prove the relevant state law elements for intentional infliction of emotional distress to recover damages for emotional distress under the FDCPA. See Id. at 971-73 (discussing split and siding with apparent majority rule that plaintiffs need not satisfy state-law elements of the tort of intentional infliction of emotional distress).

> In Smith v. Law Offices of Mitchell N. Kay, 124 B.R. 182 (D. Del. 1991), the court offered three reasons supportive of the majority position. First, Congress intended for the FDCPA to create a more effective weapon against abusive debt collection practices than provided by existing state law remedies. Id. at 188. Second, Congress designed the FDCPA to create a uniform law governing debt collection. Id. at 189. Third, the structure and purpose of the FDCPA closely track the Fair Credit Reporting Act [FCRA], and courts interpreting the FCRA have concluded that "actual damages for emotional distress can be proved independently of state law requirements" for intentional or negligent infliction of emotional distress. Id. at 188.

Davis, 585 F.Supp.2d at 972. This Court finds the reasoning of Smith and Davis persuasive in

15

the absence of instruction from the Fifth Circuit. The Court therefore determines that actual damages for emotional distress under the FDCPA should be determined using a standard apart from state tort law. Therefore, to the extent Meraz seeks emotional distress damages arising out of his FDCPA claims, those pleadings will not be dismissed.

To the extent that Meraz seeks damages premised on a bare claim of negligent or intentional infliction of emotional distress, those claims cannot stand. Nor can any claims for emotional distress arising out of the abuse of process allegations. The Court DENIES the motion to dismiss as it pertains to damages for emotional distress arising under § 1692k of the FDCPA, and GRANTS the motion as it pertains to all other claims of emotional distress.

### III. Rice's motion to dismiss for lack of jurisdiction

Rice argues in her motion to dismiss for lack of jurisdiction that Meraz's claims are not ripe. In his response to Rice's motion to dismiss, Meraz states that in the present suit he is seeking to recover both the amount of any attorney's fees awarded against him in the collection suit and "the amount of attorney fees paid by him on account of Rice's conduct alleged in this federal case (including the fees incurred prosecuting this federal case)." (Docket no. 3 at ¶ 6.) Arguing that these claims will not be ripe until the state court enters its decision, Rice asks that the Court either dismiss or stay this suit.

What remains pending in this case after the entry of this order will be Meraz's FDCPA claims against Rice based on her alleged miscalculation of the amount of attorney's fees she argues she is due for collecting the maintenance assessments Meraz owed the HOA. While the state court will decide the amount of Rice's attorney's fees earned in her collection efforts, this Court will decide whether her filings in the collection suit misstated the amount she was due, and

if so, whether those misstatements violated the FDCPA.

If Meraz prevails in this suit, he will be entitled to recover "any actual damage sustained . . . as a result of such failure [to comply with the FDCPA]," any additional damages the Court may allow not to exceed $1,000, costs of court, and attorney's fees. § 1692k(a). Merely because Meraz seeks to recover in this suit any state court judgment against him, does not mean that that is the proper measure of his damages for an FDCPA violation. Likewise, it is not clear that the amount of attorney's fees incurred in defending the collection suit has anything to do with Meraz's actual damages flowing from an FDCPA violation. Even if we assume that those fees constitute some measure of his actual damages in this case, the fact that they are not yet ascertainable does not render the FDCPA suit unripe. "The ripeness doctrine is concerned primarily with the justiciability of claims, not with certainty as to the quantum of damages . . .." Moon v. Hyosung (America), Inc., 36 F.3d 1097 (6th Cir. 1994). Meraz's FDCPA claims became justiciable when Rice filed her allegedly false and misleading claims for attorney's fees in the collection suit. He does not need to await precise computation of damages to proceed with his FDCPA claims. See Certain Underwriters at Lloyd's v. A & D Interests, Inc., 197 F.Supp.2d 741, 750 (S.D. Tex. 2002) (claims are ripe despite the fact that the precise amount of damages was not yet determinable).

Moreover, because "the FDCPA provides for liability for attempting to collect an unlawful debt . . . and permits the recovery of statutory damages . . . in the absence of actual damages[,] . . . actual damages are not required for standing under the FDCPA." Robey v. Shapiro, Marianos & Cejda, L.L.C., 434 F.3d 1208, 1212 (10th Cir. 2006) (quoting Miller v. Wolpoff & Abramson, L.L.P., 321 F.3d 292, 307 (2d Cir. 2003)). Therefore, even if Meraz

17

cannot show he has sustained any actual damages from Rice's alleged violations of the Act, it would not affect his standing or the ripeness of his FDCPA claims.

Therefore, the motion to dismiss for lack of jurisdiction will be denied.

### IV. Summary

Although Meraz's complaint is not crystal clear, it appears that he is pleading state-law causes of action for misrepresentation and fraud that are separate from, but based upon the FDCPA allegations. Based on Meraz's motion for default judgment and the response thereto, it appears that the parties understand that Rice's motion to dismiss does not seek dismissal of these causes of action. Nothing in this order should be construed as a ruling on the misrepresentation and fraud causes of action, and they remain pending along with Meraz's FDCPA claims based on his allegations that Rice misstated the amount of attorney's fees she was due in her April 21, 2008 response to Meraz's production request and her August 28, 2008 motion for partial summary judgment.

Meraz's motion for default judgment (docket no. 6) is DENIED. Rice's motion to dismiss (docket no. 3) is GRANTED in part and DENIED in part as specified above. Rice's motion to dismiss for lack of jurisdiction (docket no. 12) is DENIED.

SIGNED this  15  day of  May , 2009.

_____
ORLANDO L. GARCIA
UNITED STATES DISTRICT JUDGE